## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF NEW MEXICO

**CHRISTINA T. SALAZAR,**

        **Plaintiff,**

v.                                            **CIV. No. 07-1273 LH/LFG**

**NEW MEXICO FINANCE AUTHORITY,
WILLIAM C. SISNEROS, in his individual
capacity, JOHN T. DUFF, in his individual
capacity, and ROBERT CASWELL
INVESTIGATIONS,**

        **Defendants.**

## MEMORANDUM OPINION AND ORDER

**THIS MATTER** comes before the Court on the NMFA Defendants' Motion for Summary Judgment (Docket No. 31), filed by Defendants New Mexico Finance Authority ("NMFA"), William C. Sisneros ("Sisneros") and John T. Duff ("Duff")(collectively referred to as the "NMFA Defendants"). Plaintiff's complaint contains thirteen federal and state claims for relief relating to what she characterizes as a wrongful termination of her employment at the NMFA. Having considered the parties' submissions, the relevant law, and being otherwise fully advised in the premises, the Court concludes that the motion should be **granted**.

## I.  Overview

Plaintiff Christina Salazar ("Salazar") is the former Administrative Services Director at

NMFA, which is a New Mexico governmental instrumentality established by state statute which is responsible for holding and investing funds, and managing and placing all of the state and municipal bonds for New Mexico's public entities.  John Duff ("Duff") was Chief Operating Officer at all relevant times, and William Sisneros ("Sisneros") was then Chief Executive Officer.   NMFA employees and officers oversee the management of hundreds of millions of dollars in state funds.

These facts are undisputed:   Plaintiff Christine T. Salazar was hired as NMFA's Administrative Services Director in July 2000.  In August 2007, among others, Salazar directly supervised two employees in her department – Melissa Tafoya ("Tafoya") and Glenda Romero ("Romero"). (Compl. ¶ 13).  At all material times, Sisneros was Salazar's senior manager.  (Ex. A, Sisneros Aff. ¶ 6).  Salazar realized that a personality conflict between Tafoya and Romero had escalated, and Salazar took steps to deal with this situation (hereafter referred to as the "Tafoya/Romero matter")(Compl. ¶¶ 14 -19, 21, 23, 27, 28).   Salazar considered Tafoya's comments to be acts of violence or aggression (Ex. 3, Salazar Aff. ¶ 4).  On August 14, 2007, Salazar recommended to NMFA's Human Resources Director Dora C deBaca and Duff that Tafoya and Romero be separated in the workplace.  (Compl. ¶ 23).  On September 28, 2007, the NMFA delivered to Salazar a Notice of Recommendation of Termination of Employment (*Id*. ¶ 34).  The causes listed in the Notice were: (1) Salazar contributed to the escalation of the dispute between Tafoya and Romero; and, (2) Salazar exercised poor judgment as a supervisor.  (*Id*.).  Following an "informal pre-termination meeting" at the NMFA, Salazar's employment was terminated on October 17, 2007.  (*Id*. ¶¶ 35).  It is the opinion of Sisneros that Salazar's mishandling of the Tafoya/Romero matter stemmed from an obvious bias on Salazar's part in favor of Romero over Tafoya, and that such blatant favoritism disrupted the operations of the NMFA offices, served to escalate the employees' conflict, and warranted Salazar's dismissal from employment.  (Ex. A, Sisneros Aff. ¶

2

14).  It is Sisneros's opinion that Salazar's notice of recommendation for termination of employment was issued for the legitimate business needs of NMFA.  (*Id*. ¶ 16).  Similarly, it is Duff's opinion that "Salazar's mishandling of the interaction between her two employees reflects an obvious bias in favor of Romero.  Salazar's creation of performance issues for Tafoya when none were reported prior to July 23 also reflects a bias against Tafoya.  Salazar's actions disrupted the operations of the NMFA offices and warranted her dismissal." (Ex. B, Duff Aff. ¶ 12).  It is his further opinion that "the decision to terminate Salazar's employment with NMFA was appropriate under the circumstances and was entirely based upon her own misconduct, attitude and failure to exercise good managerial judgment as her position required.  Her termination from employment was in the best interests of NMFA."  (*Id*. ¶ 16).

Salazar filed this lawsuit on December 18, 2007 (Docket No. 1).  In an April 29, 2008 stipulation, she dismissed all claims under 42 U.S.C. §1983 against NMFA, as well as the following state tort causes of action against all named defendants:  prima facie tort (Count VI), negligent misrepresentation (Count VII), and wrongful termination/retaliatory discharge (Count VIII) (Docket No. 25).  On July 15, 2008, Chief U.S. Magistrate Judge Garcia entered an Order Staying Discovery and Vacating Pretrial Deadlines Due to Filing of Motions Raising Qualified Immunity (Docket No. 34).  Plaintiff's remaining claims are under the First and Fourteenth Amendments of the United States Constitution (Counts I, II, III and IV) and Conspiracy under 42 U.S.C. § 1983 (Count X) against Defendants William C. Sisneros and John T. Duff in their official and individual capacities.  Plaintiff also has remaining claims for Breach of an Implied Contract (Count V), Civil Conspiracy under New Mexico's Common Law (Count XII) and Breach of the Implied Covenant of Good Faith and Fair Dealing (XIII) against all NMFA Defendants.

## II.  Plaintiff's Motion to Strike the Sisneros and Duff Affidavits

Defendants attached the affidavits of William C. Sisneros and John T. Duff to their brief, as Exhibits A and B respectively.  In her response brief, Salazar moves to strike the following paragraphs of each affidavit:

### The Sisneros Affidavit

Salazar objects to Sisneros's averments in the following paragraphs of his affidavit about the following topics:

> Paragraph 7 – Duff's actions in contacting and making arrangements for an investigation by Robert Caswell Investigations ("RCI") into the Tafoya/Romero matter;
> Paragraphs 9 and 10 – what the investigation revealed, relating to what Tafoya told Salazar, and Salazar's awareness and actions pertaining to the Tafoya/Romero matter;
> Paragraph 11 – the contents of a memorandum Salazar drafted about "new" performance issues of Tafoya, and an assertion by Sisneros that Salazar was gossiping about her employees' interactions and about remarks by Tafoya;
> Paragraph 12 – Sisneros's opinions as to which actions by Salazar "reflected poor managerial judgment on [her] part";
> Paragraph 13 – a statement that Romero contacted Duff, what Romero told Duff, and that Duff then placed Tafoya and Romero on administrative leave with pay;
> Paragraph 14 – Sisneros's opinion that Salazar mishandled the Tafoya/Romero matter, that she displayed "blatant favoritism" of Romero over Tafoya, and that this escalated the conflict between Tafoya and Romero, and warranted Salazar's dismissal from employment;
> Paragraph 16 – Sisneros's opinion that the notice of recommendation for termination of employment of Salazar was issued for legitimate business needs and accurately stated that Salazar's supervisory actions reflected favoritism of Romero over Tafoya, created new personnel issues relating to Tafoya after the fact, and that Salazar failed to inform her supervisor of this situation, all of which reflected poor judgment, and exacerbated the situation; and,
> Paragraph 17 – Sisneros's opinion that the decision to terminate Salazar's employment was appropriate under the circumstances, was based upon her own misconduct, attitude and failure to exercise good managerial judgment, and was in the best interests of NMFA.

### The Duff Affidavit

Likewise, Salazar objects to Duff's averments in the following paragraphs of his affidavit about the following topics:

> Paragraph 6 – Duff's opinion that a statement attributed to Tafoya was neither violent nor

a threat of violence, and that Salazar disagreed with this opinion;

<u>Paragraphs 10, 12 and 14</u> – statements about Salazar's actions in sending Tafoya home on administrative leave and Salazar's reporting a remark by Tafoya to Romero ("I'm sorry I left your office in a huff this morning, but if not I was going to slam Glenda's [Romero's] head through the wall").  Paragraph 10 states Duff's opinion that Salazar created new and detrimental performance issues related to Tafoya, covering a time period prior to Tafoya's remarks about Romero, and in doing this and failing to notify him (Duff), Duff opined that Salazar showed an unprofessional bias favoring one employee over another.  Duff further opined that a supervisor with Salazar's experience and position should have known how to deal with this type of employee dispute in a professional manner rather than in this way, which he opined, served to undermine NMFA's work environment, perpetuated the dispute and warranted Salazar's dismissal, which was necessary for the legitimate business needs of NMFA.  Duff further states that the Notice of Recommendation for Termination of Employment (Ex. B-1) accurately reflects these actions by Salazar that demonstrated poor managerial judgment on her part and served to prolong a negative situation.

Salazar objects to this proffered evidence on several grounds: that the assertions are not all based upon first-hand observations or personal experience, and are not specific enough to be evaluated by the Court as to whether or not they would admissible in evidence at trial.  Salazar argues that the affidavit of Sisneros relies on "hearsay, third-party reports, conclusory statements, speculation, and conjecture," (Resp. at 3) and complains that the Duff affidavit suffers the same deficiencies.  (*Id*. at 4).

Rule 56(e)(1) requires that affidavits must be on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant is competent to testify on the matters stated.  In its determination of whether genuine issues of material fact make a jury trial necessary, a court necessarily may consider only the evidence that would be available to the jury.  *See Truck Ins. Exchange v. MagneTek, Inc*., 360 F.3d 1206, 1216 (10th Cir. 2004)(affirming summary judgment, in light of the available evidence, because "[j]ury verdicts may not be based on speculation or inadmissible evidence or be contrary to uncontested admissible evidence").

The Court has combed the contents of both affidavits.  Both affidavits state in the first paragraph that the undersigned affiant has been duly sworn and upon oath states that the matters that

follow are based upon his own personal knowledge.  The primary purpose of these affidavits is to convey the knowledge of Duff and Sisneros of Salazar's job performance, and the factors involved in their decision to terminate Salazar.  There are instances in each affidavit of the affiant testifying about the actions and statements of others, which obviously took place outside the presence of the affiant.  The Court will consider the evidence contained in both affidavits, not because this evidence is offered as truth of the matters asserted, but rather as proof of what Duff and Sisneros relied upon in their decision-making processes.

For these reasons, the Court concludes that Plaintiff's request that the Court strike certain paragraphs of the Sisneros and Diff affidavits is **denied**.


## III.  Additional Undisputed Facts

The Court has carefully reviewed the factual submissions of the parties and accepts the following facts as being relevant and undisputed[1]:

### A.  Salazar's Employment Status

Salazar was hired as NMFA's Administrative Services Director in July 2000 (Compl. ¶ 11). Personnel Policy 1.2 (Ex. C-1) was in effect during Salazar's employment. (Ex. C, C deBaca Aff. ¶ 5).

Policy 1.2 states that

Employment with NMFA is 'at will' employment.  This means that the employee

---

[1]  The Court notes that it has carefully reviewed Plaintiff's Statement of Supplemental Material Facts. Most of these 32 paragraphs challenge minor details in the chronology of Plaintiff's interactions with Tafoya and Romero in July and August of 2007.  According to Salazar, some of these facts indicate that she treated a "mean, petty, and vindictive employee (Tafoya). . . in an even-handed manner via-a-vis [sic] another employee who was more productive and enjoyable to work with (Romero)."  Pl's. Resp. at 7.  Many of the assertions are in support of the notion that Salazar treated Tafoya and Romero equally and/or equitably.  The Court is unable to discern the relevance to Plaintiff's claims of any of these assertions.

may terminate his or her employment at any time.  It also means that the Authority can terminate the employee's employment at any time, with or without notice or cause.  Nothing in this policy confers on an employee any property rights to their position either in the orientation period or when they become a regular full or part-time employee.  While the Authority generally adheres to progressive discipline, it is not bound or obligated to do so.  Again, in the sole discretion of the Authority, the employee may be terminated at any time, with or without notice or cause.  As an at will employee, the employee is not guaranteed, in any manner, that he or she will be employed for any set period of time.  No representative of the Authority other than the Executive Director has the authority to enter into any agreement, implied or explicit, with prospective employees for employment for any specified period.

Personnel Policy 8.11 (Ex C-1), was also in effect at all relevant times.  It states that a system of progressive discipline is generally used, "except that the nature and severity of the discipline will be determined on an individual basis according to the particular circumstances.  Depending upon the seriousness of the issue being addressed, any and all of the steps outlined below may be bypassed during the disciplinary process."  It states further that,

> [u]pon the recommendation of the department manager and the approval of the Executive Director, an employee may be discharged when, in the opinion of the department manager and the Executive Director, the nature of a violation warrants it or if previous disciplinary actions have not resolved the problem. In the case of the pending termination of a regular full or part-time employee, the Executive Director or his/her designee will usually conduct an informal pre-termination meeting with the employee; this is an opportunity for the employee to furnish additional facts before a termination decision is finalized.  The Executive Director will decide whether there are reasonable grounds to support discharging the employee and will communicate his/her decision to the employee in writing usually within three days of the pre-termination meeting.

Salazar signed an at-will statement on June 7, 2005 (Ex. A-2).  In this statement, Salazar stated that she "understand[s] that the Handbook does not constitute a contract of employment and is subject to revision by the Authority without prior notice and at its sole discretion. . . . I also understand that this Handbook supersedes all prior versions of an employee handbook or manual for employees that the Authority has issued.  I further understand that my employment status is at-will and that this status can be changed only by a writing signed by the Executive Director of the

7

Authority." *Id*.

### B.  External Investigation by Robert Caswell Investigations

Independent investigator Robert Caswell Investigations ("RCI") was retained and provided Duff with an investigative report setting forth a chronology of events, confirming that Salazar was aware of a growing conflict between two employees she supervised, Tafoya and Romero, but repeatedly failed to address the conflict in a professional manner.  (Ex. B, Duff Aff. ¶ 8).   Salazar failed to inform Duff or other individuals in her chain of senior management that the conflict was ongoing.  *Id*.

## IV.  LEGAL STANDARDS

### A.  Summary Judgment

Summary judgment "should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." FED.R.CIV.P. 56(c).  The party opposing summary judgment "may not rely merely on allegations or denials in its own pleading; rather, its response must – by affidavits or as otherwise provided in this rule – set out specific facts showing a genuine issue for trial." FED.R.CIV.P 56(e)(2).  Judgment is appropriate "as a matter of law" if the nonmoving party has failed to make an adequate showing on an essential element of its case, as to which it has the burden of proof at trial.  *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986); *Lopez v. LeMaster*, 172 F.3d 756, 759 (10th Cir. 1999).

In order to warrant consideration by the Court, the factual materials accompanying a motion for summary judgment must be admissible or usable at trial.  *Celotex* at 324.  It is not the court's role, however, to weigh the evidence, assess the credibility of witnesses, or make factual findings

in ruling on a motion for summary judgment.  Rather, the Court assumes the evidence of the non-moving party to be true, resolves all doubts against the moving party, construes all evidence in the light most favorable to the non-moving party, and draws all reasonable inferences in the non-moving party's favor.  *See Hunt v. Cromartie*, 526 U.S. 541, 551-52 (1999).


## V.  ANALYSIS

### A.  Federal Claims

#### 1.  Fourteenth Amendment: Procedural Due Process and Property Interest (Counts I and II)

In her Complaint, Salazar alleges that Sisneros and Duff deprived her of procedural due process (Count I) and substantive due process (Count II) in violation of the Fourteenth Amendment.

The Fourteenth Amendment proscribes a state from, among other things, depriving a party of "property without due process of law."  U.S. Const. Amend. XIV, § 1.  Procedural due process ensures the state will not deprive a party of property without engaging fair procedures to reach a decision, while substantive due process ensures the state will not deprive a party of property for an arbitrary reason regardless of the procedures used to reach that decision.  *See Hyde Park Co. v. Santa Fe City Council*, 226 F.3d 1207, 1210 (10th Cir. 2000).  The Tenth Circuit established long ago that to prevail on either a procedural or substantive due process claim, a plaintiff must first establish that a defendant's actions deprived plaintiff of a protectible property interest.  *See Weathers v. West Yuma County Sch. Dist. R-J-1*, 530 F.2d 1335, 1340-42 (10th Cir. 1976)(absence of a protectible  property interest foreclosed further inquiry into plaintiff's procedural and substantive due process claims).  The Supreme Court defines "property" in the context of the Fourteenth Amendment's Due Process Clause as a "legitimate claim of entitlement" to some benefit.

*Board of Regents v. Roth*, 408 U.S. 564, 577 (1972).  It must be more than an abstract need or a unilateral expectation.  *Id*. at 577.  The Constitution does not create property interests; rather, they must "stem from an independent source such as state law rules or understandings that secure certain benefits and that support claims of entitlement to those benefits.  *Id*.

 Because the amount of process due to Salazar prior to termination depends on whether or not she was deprived of a protected property interest, the Court must first address Count II.  *See Hyde Park Co.*, 226 F.3d at 1210.  "Under New Mexico law, a public employee has a protected property interest only if he has an express or implied right to continued employment."  *Rusillo v. Scarborough*, 935 F.2d 1167, 1170 (10th Cir. 1991).  An employee's at-will status ordinarily forecloses a property interest claim because the employee has no legitimate expectation of further employment.  *Id*.

Employment in New Mexico is presumptively at will unless there is an express contractual provision stating otherwise.  *See Hartbarger v. Frank Paxton Co.*, 857 P.2d 776, 779 (N.M. 1993).  Salazar has produced no such contractual provision, and in fact the  only evidence before the Court indicates that on June 7, 2005, Salazar signed an statement that she "understands[s] that the Handbook does not constitute a contract of employment . . . and that [her] employment status is at-will and that this status can be changed only by a writing signed by the Executive Director of the Authority."  (Ex. C-2).  Personnel Policy 1.2, cited above, clearly and explicitly states that employment is "at-will" and that employees do not have property rights in continued employment.  Salazar thus had no right to expect continued employment or to expect that she would only be terminated for cause.  *See Lukoski v. Sandia Indian Mgmt. Co.*, 748 P.2d 507, 509-510 (N.M.1988)(employment manual that clearly and conspicuously states that employment is terminable at the will of the employer instills no reasonable expectation of job security).

Salazar argues that a manual existed prior to 2005 that contained a "for cause" standard rather than an at-will employment relationship. She contends that she did not have adequate notice of the change in the policy. Indeed, the Supreme Court has stated that "[a]n essential principle of due process is that a deprivation of . . . property 'be preceded by notice and opportunity for hearing appropriate to the nature of the case.' " *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 542 (1985). Specifically, "notice must be of such nature as reasonable to convey the required information, . . . and it must afford a reasonable time for those interested to make their appearance." *Mullane v. Central Hanover Bank & Trust Co*., 339 U.S. 306, 314 (1950)(citations omitted).

The parties here do not genuinely dispute the following facts, as contained in Exhibit C, Affidavit of Dora C de Baca. In 2005, NMFA undertook to make revisions to the NMFA Personnel Policy Manual. Salazar received a copy of the new draft policy and the proposed final draft. Among the changes made was to specifically notify employees of the at-will policy. In addition to this clarification, there were beneficial changes for employees including an increase in the number of paid vacation days, availability of alternative work schedules, meal and rest periods, and enhancements in the retirement besting schedule. Salazar was present at the May 26, 2005 meeting when the draft policy was submitted to Sisneros, and approved by the Board of Directors. Salazar made no comments to the Board relating to the policy at this meeting.

Given these undisputed facts, it is appropriate for this Court to address as a matter of law whether the new policies created a property interest in continued employment. *See Darr v. Town of Telluride, Co*., 495 F.3d 1243, 1253 (10th Cir. 2007). The Court finds that NMFA amended its prior policies after providing Salazar with constitutionally adequate notice that was of such a nature as reasonable to convey the required information, affording Salazar a reasonable time to be heard about the revisions. Salazar was present at the Board meeting when the changes were approved and

11

C De Baca has testified that Salazar made no comments to the Board relating to the policy at the May 26, 2005 meeting.  (Ex. C, C de Baca Aff. ¶ 5).

Salazar has failed to raise a fact issue that she was anything other than an at-will employee. Thus, she cannot demonstrate that she was deprived of a property interest in continued employment.

The Court notes that NMFA had an optional progressive discipline policy, contained in Section 8.11 of the Personnel Policies.  This section states that progressive discipline is generally used, but may be bypassed altogether, and that an employee may be discharged if warranted by the nature of the violation.  Clearly this policy did not provide Salazar with a mandatory opportunity to be heard prior to her termination.  Furthermore, Salazar's absence of a protected property interest in her employment forecloses her procedural due process claim.  *Hyde Park Co*., 226 F.3d at 1210. Where there is no property interest, there is no constitutional requirement that any specific procedures need be followed, not even a pretermination hearing.  *See Farthing v. City of Shawnee, Kan.*, 39 F.3d 1131 (10th Cir. 1994).

Thus, as Salazar was an at-will employee, she had no contract-based rights and therefore no property interest under the constitution, foreclosing her claims for implied contract and violation of procedural due process.  Accordingly, Defendants are entitled to summary judgment on Counts I and II.

### 2.  Fourteenth Amendment: Liberty Interest (Count III)

Romero alleges that she has a liberty interest in her reputation and good standing within the Santa Fe and Albuquerque communities, and that "[a]s a result of being branded  incompetent, dishonest and 'trouble' because of the unjustified and unsupported claims of Duff and Sisneros, Salazar was forced to leave her employment with the NMFA under a cloud of humiliation and embarrassment".  (Compl. ¶¶ 64, 65).  She further alleges that the stigmatizing effect of being

12

categorized as incompetent and dishonest with respect to the circumstances causing her termination will lead to harm in her attempts to seek and obtain other comparable employment within these communities.  (*Id.* ¶ 68).

To state a claim founded on a liberty interest, an employee must show that a public employer took action to terminate an employee based upon a public statement of unfounded charges of dishonesty or immorality that might seriously damage the employee's standing or associations in the community, and foreclose the employee's freedom to take advantage of future employment opportunities.  *Garcia v. City of Albuquerque*, 232 F.3d 760, 772 (10th Cir. 2000).   To have an actionable claim for violation of a liberty interest, Plaintiff must show (1) statements made by Defendants impugned her good name, reputation, honor or integrity; (2) the statements were false; (3) the statements occurred in the course of terminating the employee or must foreclose other employment opportunities; and, (4) the statements were published.  *Tonkovich v. Kansas Bd. of Regents*, 159 F.3d 504, 526(10th Cir. 1998).  The mere fact of termination does not trigger the protections of due process  – the fact that someone has lost a job is not, without more, sufficiently stigmatizing.  *Lancaster v. Independent Sch. Dist. No. 5*, 149 F.3d 1228, 1235 (10th Cir. 1998).

Salazar claims that she was branded "incompetent, dishonest and 'trouble.'" (Compl. ¶ 65). One element missing in her proof is that any false statements were published about her.  Focusing on the public aspect of her burden of proof, the Court notes that intra-government discussions have been determined to be insufficient.  *Asbill v. Housing Auth. of Choctaw Nation of Okla.*, 726 F.2d 1499, 1503 (10th Cir. 1984), *citing Bishop v. Wood*, 426 U.S. 341, 348 (1976).  Furthermore, her allegation that these categorizations of her will lead to harm in her attempts to seek and obtain other comparable employment within the Santa Fe and Albuquerque communities is too speculative and intangible to constitute a deprivation of a liberty interest.  *See Workman v. Jordan*, 32 F.3d 475, 481

13

(10th Cir. 1994).

For these reasons, the Court concludes that Salazar cannot demonstrate that she was deprived of a liberty interest in violation of the Fourteenth Amendment, and Defendants are entitled to summary judgment on Count III.

### 3.   First Amendment: Free Speech Rights (Count IV)

Salazar alleges that Duff and Sisneros terminated her employment, in part, because she participated in discussions with NMFA management centered on the problems of:  workplace violence; the necessity of an investigation into reports she had made of workplace violence; and, the need for training for management with respect to understanding and addressing situations of workplace violence.   (Compl. ¶ 71).  In Paragraph 72 of her Complaint, Salazar claims that she participated in protected speech, as set forth in Paragraph 55 of her Complaint – however Paragraph 55 relates to allegations that her procedural due process rights have been violated.  Later in her Complaint, she alleges that the First Amendment protects a public employee from being discharged following an exercise of free speech rights on a matter of public concern, and that addressing workplace violence and seeking to remedy such violence is a matter of public concern.  (Compl. ¶ 74).   She claims that her exercise of this speech was a motivating factor in effectuating her termination (*Id.* ¶ 76), and that Sisneros and Duff retaliated against her for her expressions of free speech by terminating her (*Id.* ¶ 78).

Free speech retaliation claims by public employees involve balancing the interests of the employee, as a citizen, in commenting upon matters of public concern, and the interest of the state, as employer, in promoting the efficiency of the public services it performs through its employees. *Pickering v. Bd. of Educ.*, 391 U.S. 563, 568 (1968). In interpreting constitutional protections accorded to public employee speech, *Pickering* and the cases decided in its wake require the Court

14

to determine, first of all, whether the employee spoke as a citizen on a matter of public concern. *Garcetti v. Ceballos*, 547 U.S. 410, 418 (2006). "If the answer is no, the employee has no First Amendment cause of action based on his or her employer's reaction to the speech." *Id*. (citing *Connick v. Myers*, 461 U.S. 138, 147 (1982).

The *Garcetti* opinion has profoundly altered how courts review First Amendment retaliation claims. *Casey v. W. Las Vegas Indep. Sch. Dist*., 473 F.3d 1323, 1325 (2007). Following *Garcetti*, the crux of the inquiry is whether the employee acted pursuant to his or her official duties. If a public employee engages in speech during the course of performing an official duty and the speech reasonably contributes to or facilitates the employee's performance of the official duty, the speech is made pursuant to the employee's official duties and is not protected by the First Amendment. *Brammer-Hoelter v. Twin Peaks Charter Academy*, 492 F.3d 1192, 1203 (10th Cir. 2007).

Indeed, the issue of whether or not the employee was speaking pursuant to his/her official duties, is the first prong of a five-part test referred to as the *Garcetti/Pickering* analysis.[2] *Id*. at 1202. Because Salazar is not able to get past the first prong of this test, the Court will not go into any detail about the remaining four steps.

Salazar argues that speech is only related to official duties where the employee engages in activities the employee is paid to do. Pl's. Resp. at 25. She contends that there is no evidence in the record that she ever had the responsibility to oversee, implement or administer the Violence in the Workplace Policy of the NMFA.

The evidence in the record is that Salazar was Director of NMFA's Administrative Services.

---

[2] Prior to the Supreme Court's decision in *Garcetti v. Ceballos*, the inquiry combined the first two steps and was described as a four-part test. *Brammer-Hoelter*, 492 F.3d at 1202 n.4 (*citing Lybrook v. Members of Farmington Mun. Sch. Bd. of Educ*., 232 F.3d 1334, 1338 (10th Cir. 2000)).

According to her affidavit (Ex. 3), on August 10, 2007, Salazar gave Duff and Sisneros a memo describing a meeting that had occurred the prior day, during which Tafoya made a comment[3] that Salazar considered to violate the NMFA's Violence in the Workplace Policy (*Id.* ¶ 4). She testified that when she understood the potential violence in the Romero-Tafoya relationship, she acted to address the violence, immediately reported it to others, and sought follow-up. (*Id.* ¶ 8).

Duff testified in his affidavit (Ex. B, Duff Aff. ¶ 5) that he was uncomfortable with Salazar's description in a memo that "violence" had occurred because the memo did not describe any "threats of violence" on the part of Tafoya. Duff testified that it was his opinion that Salazar's memo confirmed that no violence or threat of violence had occurred; that he did not conclude that Tafoya's comment to Salazar regarding Romero constituted either a threat or violence; and that Salazar disagreed with him. (*Id.* ¶ 6). An outside investigator subsequently concluded that Salazar was aware of a growing conflict between two employees she supervised, Tafoya and Romero, but repeatedly failed to address the conflict in a professional manner. (*Id.* ¶ 8).

In summary, the only evidence in the record before the Court indicates that Salazar's speech regarding workplace violence was in her capacity as the supervisor of Tafoya and Romero. All evidence indicates that her speech involved the performance of her official duties, for which she was paid her salary, and that she was speaking pursuant to her official duties. In short, there is no evidence that Salazar was acting as a private citizen or in any capacity other than a professional one when she invoked the Violence in the Workplace Policy.

The Court thus concludes that the speech did not enjoy First Amendment protection.

---

[3] In Salazar's Affidavit (Ex. 3), she testified that the comment she considered to be a threat of harm to Romero was Tafoya's statement that if she "did not leave the meeting that day she would have slammed Romero's head through a wall." (*Id.* ¶ 2).

Defendants are therefore entitled to summary judgment on Count IV.

### 4.  42 U.S.C. § 1983 Conspiracy (Count X)

Salazar alleges that Sisneros and Duff conspired with Defendant RCI to deprive her of her civil and constitutional rights (Compl. ¶122).  To succeed on a section 1983 conspiracy claim, the plaintiff "must prove both the existence of a conspiracy and the deprivation of a constitutional right."  *Thompson v. City of Lawrence, Kan.*, 58 F.3d 1511, 1517 (10th Cir. 1995).  Because Salazar cannot show that she was deprived of any constitutional rights, summary judgment must also be granted to the NMFA Defendants on this claim.

### 5.  Summary of Status of Case at this Juncture

As noted above, Salazar dismissed all claims under 42 U.S.C. §1983 against NMFA by stipulation, as well as the following state tort causes of action against all named defendants:  prima facie tort (Count VI), negligent misrepresentation (Count VII), and wrongful termination/retaliatory discharge (Count VIII) (Docket No. 25).  For the reasons stated in this Memorandum Opinion and Order, the Court has granted summary judgment to Defendants Sisneros and Duff, thereby dismissing all federal claims against them, namely those contained in Count I (procedural due process), Count II (substantive due process), Count III (liberty interest), Count IV (First Amendment free speech), and Count X (conspiracy under 42 U.S.C. § 1983).

### B.  State Law Claims

In the motion now being considered by the Court, Defendants Duff and Sisneros focused primarily on dismissal of the federal claims against them, and essentially did not address dismissal of state law claims.  The Court notes that Sisneros and Duff are immune from liability for state law claims pursuant to the New Mexico Finance Authority Act, NMSA 1978 § 6-21-25, which provides:

> Neither any member of the authority nor any person acting in its behalf, while acting within the scope of his authority, shall be subject to any personal liability for any action taken or omitted within that scope of authority.

Although Salazar contends that they had no reasonable basis to terminate her, it is undisputed that Sisneros and Duff were acting on behalf of the NMFA and within the scope of their authority when they took the employment actions of which she complains.

The Court concludes that Sisneros and Duff are immune from liability pursuant to the New Mexico Finance Act. Accordingly, they are entitled to summary judgment on all state law claims that have not already been dismissed by Salazar pursuant to stipulation.

While Salazar stipulated to the dismissal of all claims under 42 U.S.C. §1983 against NMFA, and the Court has now dismissed all federal claims as to all Defendants, it is the understanding of the Court that the following state law claims remain pending against NMFA: Count V (breach of implied contract of employment), Count XII (common law conspiracy), Count XIII (breach of implied covenant of good faith and fair dealing).[4] For the reasons that follow, the Court declines to exercise supplemental jurisdiction over these remaining state law claims and hereby dismisses such claims without prejudice.

Because these remaining claims arise under state law, and there is no allegation or evidence that the parties' citizenship is diverse, such claims are before this Court only by virtue of the supplemental jurisdiction conferred by 28 U.S.C. § 1367(a). "The district courts may decline to exercise supplemental jurisdiction over a claim under [28 U.S.C. § 1367] (a) if . . . the district court has dismissed all claims over which it has original jurisdiction." 28 U.S.C. § 1367(c)(3).

---

[4] The Court is cognizant that two state law claims remain pending against Robert Caswell Investigations, Count IX (negligence) and Count XI (tortious interference with contractual relations). These claims will be addressed in a Memorandum Opinion and Order, filed simultaneously with this one.

Having granted summary judgment on all of Salazar's claims arising under federal law, the Court declines to exercise supplemental jurisdiction over her remaining state law claims. *See Heffington v. Bush*, 2009 WL 1803282 *13 (10th Cir., June 25, 2009). In so declining, the Court has considered whether the nature and extent of pretrial proceedings, judicial economy, convenience, and fairness would be served by retaining jurisdiction. *See Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 (1988). The Court is not convinced that these factors weigh in favor of retaining jurisdiction. In this regard, the Court notes that all federal claims have been dismissed with prejudice, either on the merits or by stipulation, and the remaining state law claims against NMFA have some overlap with the remaining state law claims against RCI. Notions of comity and federalism demand that a state court try such claims in the first instance, absent compelling reasons to the contrary. In addition, 28 U.S.C. § 1367(d) may provide for tolling of the limitations period regarding these claims while this litigation was pending.

**WHEREFORE,** for the foregoing reasons, the Court concludes that the Motion for Summary Judgment by the NMFA Defendants (Docket No. 46) shall be **granted**.

**IT IS THEREFORE ORDERED** that the following counts of the Complaint shall be **dismissed with prejudice** as to Defendants New Mexico Finance Authority, William C. Sisneros and John T. Duff: Counts I-IV, and X.

**IT IS FURTHER ORDERED** that because Salazar has dismissed by stipulation Counts VI, VII and VIII, these counts shall be **dismissed with prejudice** as to Defendants New Mexico Finance Authority, William C. Sisneros and John T. Duff.

**IT IS FURTHER ORDERED** that the Court declines to exercise supplemental jurisdiction over Counts V, XII and XIII, and that these remaining claims against Defendant New Mexico Finance Authority are **dismissed without prejudice.**

19

**IT IS SO ORDERED.**

_____
**SENIOR UNITED STATES DISTRICT JUDGE**